# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**PUBLIC SERVICE COMPANY**
**OF NEW MEXICO,**

      **Plaintiff,**

**vs.**                                               **No. 15 CV 501 JAP/CG**

**APPROXIMATELY 15.49 ACRES OF LAND**
**IN MCKINLEY COUNTY, NEW MEXICO;**
**NAVAJO NATION;**
**NAVAJO TRIBAL UTILITY AUTHORITY;**
**CONTINENTAL DIVIDE ELECTRIC COOPERATIVE, INC.;**
**TRANSWESTERN PIPELINE COMPANY, LLC;**
**CITICORP NORTH AMERICA, INC.;**
**CHEVRON USA INC., as successor in interest to Gulf Oil Corp.;**
**HARRY HOUSE, Deceased;**
**LORRAINE BARBOAN, also known as, LARENE H. BARBOAN;**
**PAULINE H. BROOKS;**
**BENJAMIN HOUSE, also known as, BENNIE HOUSE;**
**ANNIE H. SORRELL, also known as, ANNA H. SORRELL;**
**MARY ROSE HOUSE, also known as, MARY R. HOUSE;**
**DOROTHY HOUSE, also known as, DOROTHY W. HOUSE;**
**LAURA H. LAWRENCE, also known as, LAURA H. CHACO;**
**LEO HOUSE, JR.; JONES DEHIYA; NANCY DEHEVA ESKEETS;**
**JIMMY A. CHARLEY, also known as, JIM A. CHARLEY;**
**MARY GRAY CHARLEY, also known as, MARY B. CHARLEY;**
**BOB GRAY, Deceased, also known as, BOB GREY;**
**CHRISTINE GRAY BEGAY, also known as, CHRISTINE G. BEGAY;**
**THOMAS THOMPSON GRAY, also known as, THOMAS GREY;**
**JIMMIE GREY, also known as, JIMMIE GRAY;**
**LORRAINE SPENCER;**
**MELVIN L. CHARLES, also known as, MELVIN L. CHARLEY;**
**MARLA L. CHARLEY, also known as, MARLA CHARLEY;**
**KALVIN A. CHARLEY; LAURA A. CHARLEY;**
**MARILYN RAMONE; WYNEMA GIBERSON;**
**IRENE WILLIE, also known as, IRENE JAMES WILLIE;**
**EDDIE MCCRAY, also known as, EDDIE R. MCCRAE;**
**ETHEL DAVIS, also known as, ETHEL B. DAVIS;**
**CHARLEY JOE JOHNSON, also known as, CHARLEY J. JOHNSON;**
**WESLEY E. CRAIG; HYSON CRAIG; NOREEN A. KELLY;**

ELOUISE J. SMITH;
ELOUISE ANN JAMES, also known as, ELOUISE JAMES WOOD, also known as,
ELOISE ANN JAMES, also known as, ELOUISE WOODS;
LEONARD WILLIE;
ALTA JAMES DAVIS, also known as, ALTA JAMES;
ALICE DAVIS, also known as, ALICE D. CHUYATE;
PHOEBE CRAIG, also known as, PHOEBE C. COWBOY;
NANCY JAMES, also known as, NANCY JOHNSON;
BETTY JAMES, Deceased;
LINDA C. WILLIAMS, also known as, LINDA CRAIG-WILLIAMS;
GENEVIEVE V. KING; LESTER CRAIG; SHAWN STEVENS;
FABIAN JAMES;
DAISY YAZZIE CHARLES, also known as,
DAISY YAZZIE, also known as, DAISY J. CHARLES;
ROSIE YAZZIE, Deceased;
KATHLEEN YAZZIE JAMES, also known as, CATHERINE R. JAMES;
VERNA M. CRAIG;
JUANITA SMITH, also known as, JUANITA R. ELOTE;
ALETHEA CRAIG, SARAH NELSON, LARRY DAVIS, JR.;
BERDINA DAVIS; MICHELLE DAVIS; STEVEN MCCRAY;
VELMA YAZZIE; GERALDINE DAVIS;
LARRISON DAVIS, also known as, LARRISON P. DAVIS;
ADAM MCCRAY; MICHELLE MCCRAY;
EUGENIO TY JAMES; LARSON DAVIS; CORNELIA A. DAVIS;
CELENA DAVIS, also known as, CELENA BRATCHER;
FRANKIE DAVIS;
GLEN CHARLES CHARLESTON, also known as, GLEN C. CHARLESTON;
VERNA LEE BERGEN CHARLESTON, also known as, VERNA L. CHARLESTON;
VERN CHARLESTON;
GLENDA BENALLY, also known as, GLENDA G. CHARLESTON;
KELLY ANN CHARLESTON, also known as, KELLY A. CHARLESTON;
SHERYL LYNN CHARLESTON, also known as, SHERYL L. CHARLESTON;
SPENCER KIMBALL CHARLESTON, JR., Deceased;
EDWIN ALLEN CHARLESTON, also known as, EDWIN A. CHARLESTON;
CHARLES BAKER CHARLESTON, also known as, CHARLES B. CHARLESTON;
SAM MARIANO; HARRY HOUSE, JR.; MATILDA JAMES; DARLENE YAZZIE;
Unknown owners, Claimants and Heirs of the Property Involved,
Unknown Heirs of Harry House, Deceased;
Unknown Heirs of Bob Gray (Bob Grey), Deceased;
Unknown Heirs of Betty James, Deceased;
Unknown Heirs of Rosie C. Yazzie, Deceased;
Unknown Heirs of Spencer Kimball Charleston, Jr. (Spencer K. Charleston), Deceased;
Unknown Heirs of Helen M. Charley, Deceased;
ESTATE OF ROSIE C. YAZZIE, Deceased;
ESTATE OF SPENCER K. CHARLESTON, Deceased;
UNITED STATES OF AMERICA;

**UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and
UNITED STATES DEPARTMENT OF THE INTERIOR;**

      **Defendants.**

**Consolidated with**

**LORRAINE J. BARBOAN, LAURA H. CHACO,
BENJAMIN A. HOUSE, MARY R. HOUSE,
ANNIE H. SORRELL, DOROTHY W. HOUSE,
JONES DEHIYA, KALVIN CHARLEY,
MARY B CHARLEY, MELVIN L. CHARLEY,
MARLA L. CHARLEY, CHRISTINE G. BEGAY,
JIMMIE GRAY, THOMPSON GREY,
BOB GREY, LEONARD WILLIE, IRENE WILLIE,
CHARLEY JOHNSON, ELOISE J. SMITH,
SHAWN STEVENS, GLEN C. CHARLESTON, and
GLENDA G. CHARLESTON,**

      **Plaintiffs,**

**vs.**                                            **No. 15 CV 826 JAP/CG**

**PUBLIC SERVICE COMPANY OF NEW MEXICO,
a New Mexico corporation, and the
UNITED STATES OF AMERICA,**

      **Defendants.**

### MEMORANDUM OPINION AND ORDER
### DENYING DEFENDANT UNITED STATES OF AMERICA'S
### MOTION TO DISMISS CASE NO. 15 CV 826 JAP/CG

Defendant United States asks the Court to dismiss Case No. 15 CV 826 JAP/CG for lack of jurisdiction and for failure to state a claim. *See* DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS (Doc. No. 14) and MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION TO DISMISS (Doc. No. 15) (together, the Motion). Public Service Company of New Mexico (PNM), a co-defendant in Case No. 15 CV 826 JAP/CG, opposes the Motion. *See* DEFENDANT PUBLIC SERVICE COMPANY OF NEW MEXICO'S RESPONSE TO DEFENDANT UNITED STATES OF AMERICA'S

MOTION TO DISMISS (Doc. No. 20). Plaintiffs in Case No. 15 CV 826 JAP/CG also oppose

the Motion. *See* PLAINTIFFS' RESPONSE TO NOMINAL DEFENDANT UNITED STATES

OF AMERICA'S MOTION TO DISMISS (Doc. No. 23). After considering the arguments and

the applicable law, the Court will deny the Motion.

I.       STANDARD OF REVIEW

The United States moves for dismissal under Rule 12(b)(1) for lack of subject matter

jurisdiction and under Rule 12(b)(6) for failure to state a claim. Under Fed. R. Civ. P. 12(b)(1),

the party seeking to invoke a federal court's jurisdiction has the burden to establish subject

matter jurisdiction. *Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.*, 693

F.3d 1195, 1201 (10th Cir. 2012). In reviewing a facial attack on a complaint for lack of

jurisdiction, the court must accept the plaintiff's allegations as true. *United States v. Rodriguez-*

*Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (citing *Riggs v. City of Albuquerque,* 916 F.2d

582, 584 (10th Cir. 1990)).

"The court's function on a Rule 12(b)(6) motion is . . . to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Ruiz v.*

*McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002). In evaluating a Rule 12(b)(6) motion, the

court must "accept as true all well-pleaded facts [in the complaint], as distinguished from

conclusory allegations, and view the facts in the light most favorable to the nonmoving

party. . . ." *Archuleta v. Wagner*, 523 F.3d 1278, 1282–83 (10th Cir. 2008) (quotation and

alteration omitted). Even though the court must accept as true all well-pleaded facts in the

complaint, the court is under no obligation to accept bare conclusory allegations. *Hall v. Belmon*,

935 F.2d 1106, 1110 (10th Cir. 1991). And the court is not required to accept legal conclusions

without factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*,

556 U.S. 662, 679 (2009). To summarize, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. . . ." *Twombly*, 550 U.S. at 555.

In addition, the United States has asked the Court to dismiss for failure to join the Navajo Nation (Nation) as an indispensable party. Fed. R. Civ. P. 12(b)(7). Rule 19 sets the standard for whether an absent party is a required and/or an indispensable party to an action. *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 997 (10th Cir. 2001). The United States has the burden of showing "the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Oklahoma v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994).

II.     BACKGROUND: FACTUAL ALLEGATIONS IN COMPLAINT

In the 1960s, PNM acquired a fifty-year right-of-way on five allotments of land owned by members of the Nation: (1) Allotment 1160, (2) Allotment 1204, (3) Allotment 1340, (4) Allotment 1392, and (5) Allotment 1877 (together, the Five Allotments). Plaintiffs own a majority of the beneficial interests in the Five Allotments. The Nation owns undivided beneficial interests in Allotment 1160 and Allotment 1392 (the Two Allotments). The United States holds fee title to the Five Allotments in trust for the Plaintiffs and the Nation.

In November 2009, knowing that its right-of-way would expire in April 2010, PNM acquired the requisite consents from owners of a majority of the beneficial interests in the Five Allotments. On November 3, 2009, PNM submitted a renewal application to the BIA under 25 U.S.C. §§ 321–328 and the applicable BIA regulations. However, in April 2011 and again in June 2014, Plaintiffs informed the BIA that they had withdrawn their consent, and as a result, in

2015, the BIA notified PNM that it could not approve PNM's renewal application. (Plf. Resp. Exs. A (Doc. No. 23-1) and B (Doc. No. 23-2).)

On September 18, 2015, Plaintiffs filed their COMPLAINT FOR FEDERAL TRESPASS (Doc. No. 1) in Case No. 15 CV 826 JAP/CG claiming that since April 8, 2010, the date PNM's fifty-year right-of-way expired, PNM's electric transmission line (AY Line) has trespassed on their property in violation of 25 U.S.C. § 345.[1] Plaintiffs have demanded a jury trial to determine liability and damages. Plaintiffs claim that damages should be equal to "the fair market value of the continued use of the right-of-way easement" from the date PNM's right-of-way expired to the date condemnation damages are awarded. (*Id.* ¶ 17; Mot. at 3.)

III.    DISCUSSION

A.    Plaintiffs have not failed to exhaust administrative remedies.

The United States first contends that the Plaintiffs' trespass claim should be dismissed under Rule 12(b)(1) because Plaintiffs "have failed to exhaust the administrative remedies available to them." (Mot. at 4.) "[O]n January 23, 2015, the Region sent PNM a letter advising PNM that it needed to procure additional landowner consent 1) from owners who had not previously consented to the right-of-way renewal; OR 2) from those owners who were previously represented by a law firm but who ha[ve] since terminated such representation; OR 3) . . . from those owners still represented by a law firm." (Mot. at 5.) The United States disagrees with Plaintiffs' allegation that the BIA abandoned PNM's renewal application after the BIA determined that PNM failed to obtain the requisite consent from owners of a majority of the

_____

[1] Section 345 provides,

> All persons who are in whole or in part of Indian blood or descent . . . who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled . . . may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States[.]

25 U.S.C. § 345.

beneficial interests in the allotments. According to the United States, the BIA (Region) cannot

"abandon" PNM's renewal application; thus, until the BIA makes a final decision on the renewal

application, the matter is still pending. The United States further argues that even if the BIA

denies PNM's application, PNM will have the right to appeal the denial to the Interior Board of

Indian Appeals (IBIA). (*Id.*); *see* 25 C.F.R. § 2.3(a) and 43 C.F.R. Subtitle A, Part 4. And, PNM

may appeal an IBIA final determination to the United States District Court. 5 U.S.C. § 704. The

United States argues that because there is no final determination on PNM's renewal application,

Plaintiffs' trespass claim is premature.

PNM views the exhaustion argument differently. PNM asserts it is unaware of "any

specific administrative remedy that *Plaintiffs* were required to utilize prior to filing their

Complaint." (PNM Resp. at 2) (emphasis added).[2] PNM contends that since Plaintiffs are not

required to affirmatively seek administrative relief, Plaintiffs have not failed to exhaust their own

administrative remedies. However, PNM fails to recognize that, technically speaking, Plaintiffs

have an available administrative remedy in the BIA proceeding. Under 25 C.F.R. § 2.8, a person

may appeal "the failure of an official to act on a request."[3] And, if the BIA somehow were to

---

[2] PNM specifically disputes the United States' assertion that the renewal application was incomplete. On the day the application was filed, November 3, 2009, the application "was complete in all respects at the time of its filing and included the requisite percentage of landowner consent." (PNM Resp. at 4.)

[3] That section provides,

> (a) A person or persons whose interests are adversely affected, or whose ability to protect such interests is impeded by the failure of an official to act on a request to the official, can make the official's inaction the subject of appeal, as follows:
>
> > (1) Request in writing that the official take the action originally asked of him/her;
> >
> > (2) Describe the interest adversely affected by the official's inaction, including a description of the loss, impairment or impediment of such interest caused by the official's inaction;
> >
> > (3) State that, unless the official involved either takes action on the merits of the written request within 10 days of receipt of such request by the official, or establishes a date by which action will be taken, an appeal shall be filed in accordance with this part.

approve PNM's renewal application, despite PNM's lack of the requisite consent from owners of a majority of the ownership interests in the Five Allotments, Plaintiffs may appeal that decision.[4]

In response, Plaintiffs contend that their decision to withdraw their consent to the renewal application "has ended any role of the BIA in the renewal process." (Plf. Resp. at 2.) According to Plaintiffs, PNM recognized the failure of the administrative process when it brought a condemnation action seeking a right-of-way on the Five Allotments. *See Public Service Company of New Mexico v. 15.49 Acres of Land, et al.*, Case No. 15 CV 501 JAP/CG (consolidated with Case No. 15 CV 826 JAP/CG). Plaintiffs contend that the BIA letter to PNM stating that the renewal application "lacked evidence of sufficient landowner consent" is itself evidence that the administrative process is at an end. (Plf. Resp. Ex. B.) "Given [P]laintiffs' refusal to consent, there is nothing further that PNM can do, and the administrative process as to these allotments is finished." (*Id.* at 4.) Although Plaintiffs admit that PNM's "request for renewal remains pending before the BIA for a number of other allotments," Plaintiffs maintain the pending request for renewal is irrelevant to the Five Allotments. (*Id.*) Plaintiffs argue that under these circumstances, the Court should hold that any further administrative proceedings would be futile, and allow Plaintiffs' trespass claim to proceed. *A.F. ex rel Christine B. v. Espanola Public Schools*, 801 F.3d 1245, 1249 (10th Cir. 2015) (recognizing futility as an exception to failure to exhaust).

---

> (b) The official receiving a request as specified in paragraph (a) of this section must either make a decision on the merits of the initial request within 10 days from receipt of the request for a decision or establish a reasonable later date by which the decision shall be made, not to exceed 60 days from the date of request.

25 C.F.R. § 2.8.

[4] Given that the BIA has indicated that it cannot approve PNM's application now that the Plaintiffs have withdrawn consent, such a decision is highly unlikely. PNM is pursuing condemnation as an alternative to obtaining a consensual right-of-way over the Five Allotments. Whether PNM has a right to condemn the Two Allotments partially owned by the Nation is the subject of an interlocutory appeal before the Tenth Circuit Court of Appeals. *See* ORDER (Doc. No. 131). The Court has stayed all claims in this consolidated case pending resolution of the interlocutory appeal.

The Court agrees that any further administrative proceeding would be futile because Plaintiffs "have not and will not consent" to the renewal of PNM's right-of-way. (Mot. at 4.) Under BIA regulations, "no right-of-way shall be granted over and across any individually owned lands without prior written consent of the owners or owners of such land. . . ." 25 C.F.R. § 169.3 (effective until April 21, 2016). The BIA, however, "may . . . grant rights-of-way over and across individually owned lands without the consent of the individual Indian owners when . . . [t]he land is owned by more than one person, and the owners or owner of a majority of the interests therein consent to the grant." 25 C.F.R. 169.3(c)(2).[5]

Under the unusual circumstances presented here, Plaintiffs need not wait for the BIA to deny PNM's renewal application before bringing their trespass claims nor must Plaintiffs appeal the failure of the BIA to act on PNM's renewal application. However, the Court also recognizes that Plaintiffs' right to pursue their trespass claims is substantively affected if PNM has the right to condemn its right-of-way over the Two Allotments. That issue is before the Tenth Circuit on interlocutory appeal. Therefore, even though Plaintiffs are not administratively barred from pursuing their trespass claims, the Court has stayed both the condemnation claims and the trespass claims pending resolution of the appeal. If the Tenth Circuit affirms this Court's dismissal of PNM's condemnation claims against the Two Allotments, the Court will exercise jurisdiction over Plaintiffs' trespass claims as to the Two Allotments. If, on the other hand, the

_____

[5] On April 21, 2016, new regulations on the grant of rights-of-way over Indian allotments will take effect. The requirement of majority consent, however, has not changed. Effective April 21, 2016, 25 C.F.R.§ 169.107 will state

> (a) Except as provided in paragraph (b) of this section, the applicant must notify all individual Indian landowners and must obtain consent from the owners of the majority interest in each tract affected by the grant of right-of-way.

Rights-of-Way on Indian Land, 79 FR 34455-01, 34466 (June 17, 2014). Renewals of rights-of-way are governed by this provision and by 25 U.S.C. § 169.202 (effective April 21, 2016). *Id.* at 34470.

Tenth Circuit reverses and allows PNM to condemn its right-of-way across the Two Allotments, then the Court may dismiss the trespass action.

B.     PNM does not have a "license" under the Administrative Procedures Act.

In a related argument, the United States contends that the Court should dismiss Plaintiffs' trespass claim as premature because under the Administrative Procedures Act (APA), PNM's right-of-way will not expire until the BIA makes a final decision on PNM's renewal application. Under the APA, "[w]hen a licensee has made timely and sufficient application for a renewal or a new license in accordance with agency rules, a license with reference to an activity of a continuing nature does not expire until the application has been finally determined by the agency." 5 U.S.C. § 558. "License" is defined as "the whole or a part of an agency permit, certificate, approval registration, charter, membership, statutory exemption or other form of permission." 5 U.S.C. § 551(8). According to the United States, PNM's renewal application involves "1) an activity of a continuing nature that 2) is subject to Secretarial approval (permission)." (Mot. at 5.) The United States essentially contends that as the holder of a "license," PNM, as a matter of law, cannot be trespassing on Plaintiffs' property while the BIA considers PNM's renewal application.

Notably, PNM has not joined the United States' argument. In fact, PNM's Response is silent on this issue. In addition, the United States has failed to cite any authority stating that these APA provisions apply to a right-of-way or easement on real property. PNM's renewal application is currently governed by the BIA's regulatory process found in 25 C.F.R. 169.1–169.28. The Court is not convinced that PNM's right-of-way to build and maintain its electric transmission line over Plaintiffs' property should be considered a "license" as that term is defined in 5 U.S.C. § 551(8). If Congress had intended to include rights-of-way or easements on

10

real property in the license definition, it could have done so explicitly.[6] Thus, Plaintiffs are not barred from pursuing their trespass claims by failing to exhaust their remedies in the BIA administrative process.

C.    Plaintiffs have a cause of action under 25 U.S.C. § 345.

The United States next contends that this Court lacks federal question jurisdiction because Plaintiffs cannot sue in federal court for trespass under 25 U.S.C. § 345. According to the United States, Congress enacted § 345 only to protect tribal members who were entitled to, but did not receive, an allotment of land. (Mot. at 8.) *See United States v. Eastman*, 118 F.2d 421, 423 (9th Cir. 1941) ("It is plain from the whole statute that Congress intended merely to authorize suits to compel the making of allotments in the first instance.").

Plaintiffs counter that the Tenth Circuit Court of Appeals has recognized that allotment owners have the right to sue for trespass under § 345. In *Nahno-Lopez v. Houser*, allotment owners brought an action against the Tribal Council of a different tribe, the tribe's manager, and the tribe's casino, alleging that the casino was trespassing on a portion of the plaintiffs' allotment. 625 F.3d 1279, 1280 (10th Cir. 2010). On appeal from a grant of summary judgment in favor of defendants, the Tenth Circuit determined that § 345 grants jurisdiction over "suits involving the interests and rights of the Indian in his allotment or patent after he has acquired it." *Id.* at 1282 (quoting *United States v. Mottaz,* 476 U.S. 834, 845 (1986)). However, the Tenth Circuit recognized that § 345 does not create cause of action or a standard for liability. *Id.* (stating that "Plaintiffs' first count—which asserts "violation" of 25 U.S.C. § 345—does not in

---

[6] Right-of-way is defined as a "right to pass through the property owned by another." *Black's Law Dictionary* (10th ed. 2014). Easement is defined as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)." *Id.* The Black's definition of license is "[a] privilege granted . . . upon the payment of a fee, the recipient of the privilege then being authorized to do some act or series of acts that would otherwise be impermissible." *Id.* With legally distinct definitions, rights-of-way, easements, and licenses cannot be considered interchangeable.

and of itself state a claim for relief."). The Tenth Circuit construed the claim as one for federal common law trespass for which § 345 provided jurisdiction. *Id.* Hence, Plaintiffs may bring their trespass claim under § 345, and the Court has federal subject-matter jurisdiction.

    D.    The Nation is not an indispensable party.

The United States asserts that Plaintiffs failed to join an indispensable party; therefore, under Rule 19, this case should be dismissed. According to the United States, Plaintiffs should have joined the Nation because it owns undivided beneficial interests in the Two Allotments. (Mot. at 8.) Rule 19 provides,

> **(a) Persons Required to Be Joined if Feasible.**
>
> > **(1) *Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> >
> > > **(A)**    in that person's absence, the court cannot accord complete relief among existing parties; or
> > >
> > > **(B)**    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > >
> > > > **(i)**    as a practical matter impair or impede the person's ability to protect the interest; or
> > > >
> > > > **(ii)**    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> >
> > **(2) Joinder by Court Order.** If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
> >
> > . . .

**(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

    **(1)**    the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

    **(2)**    the extent to which any prejudice could be lessened or avoided by:

        **(A)**    protective provisions of the judgment;
        **(B)**    shaping the relief; or
        **(C)**    other measures;

    **(3)**    whether a judgment rendered in the person's absence would be adequate; and

    **(4)**    whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(a) and (b).

In this analysis, the Court must first determine whether as a fractional interest owner in the Two Allotments, the Nation is a required party under Rule 19(a).[7] *Northern Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1278 (10th Cir. 2012). That first consideration requires the Court to determine whether, in the absence of the Nation, "complete relief could be accorded among the persons already parties to the action." *Sac and Fox Nation of Missouri v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001). In this case, the answer is "yes." Plaintiffs can move forward on their trespass claim without the Nation as a co-plaintiff. In other words, the absence of the Nation does not prevent Plaintiffs from seeking their requested relief. *Id.*

The second consideration under Rule 19(a) is whether the Nation has an interest relating to the subject of this action and, if so, whether disposition of this action in the Nation's absence may "as a practical matter impair its ability to protect that interest or subject any of the persons

---

[7] The analysis is appropriate even though the Nation would be joined as an involuntary plaintiff.

already parties to a substantial risk of inconsistent obligations." *Id.* at 1259. The United States maintains that Plaintiffs' trespass claims "could affect land owned by the Nation." (Mot. at 8.) But, the United States misses the point. The Nation's interest in the Two Allotments will not be directly affected by this case.

The case law cited by the United States is inapplicable to the situation presented here. In *Davis ex rel. Davis v. United States*, the plaintiffs sued the United States and various agencies and officials for wrongfully allowing the Seminole Nation of Oklahoma (the Tribe) to exclude plaintiffs from participation in some of its assistance programs due to their mixed tribal and African descent. 343 F.3d 1282, 1285 (10th Cir. 2003). The district court dismissed the case for failure to join the Tribe, an indispensable party, with respect to the wrongful exclusion claim and the related right to claim a share of a judgment fund. *Id.* The Tenth Circuit upheld the dismissal concluding that "both the Tribe and Defendants have interests that would likely be prejudiced by litigation in the Tribe's absence." *Id.* at 1292. The Tenth Circuit also found that "a judgment rendered in the Tribe's absence could well lead to further litigation and possible inconsistent judgments." *Id.* at 1293. Finally, the Tenth Circuit ruled that the district court did not abuse its discretion in determining "Plaintiffs' judgment-fund claims could not, in equity and good conscience, proceed in the absence of the Tribe." *Id.* at 1294. Because the Tribe was directly involved in the alleged wrongs that were the subject of the lawsuit, the court correctly determined the Tribe was indispensable. In this case, there are no claims against the Nation and the Nation's interest in the Two Allotments will not be directly affected by a ruling here.

In contrast, Plaintiffs point to a case more factually similar to this one, which involved the joinder of trust beneficiaries. In *Godfrey v. Kamin*, the court held that Mary Swartz, the "sole life beneficiary" of a trust, was not a required party to a case brought by other beneficiaries

against the trustee for breach of fiduciary duty. 194 F.R.D. 627, 628–32 (N.D. Ill. 2000). The

court recognized the general rule requiring the joinder of trust beneficiaries in actions against a

trustee but held that the case was not "an action brought to foreclose the interests of the trust

beneficiaries, and will neither affect trust assets nor replace current trustees." *Id.* at 629–30.

Because the plaintiffs were "only seeking damages that they allegedly suffered as a result of

defendant[s'] negligent conduct and they were not seeking to alter the trust in any way that

potentially would damage the absent beneficiary's interest in the trust," the court denied the

motion to dismiss for failure to join an indispensable party as an involuntary plaintiff. *Id.* at 631.

*See also Britton v. Green*, 325 F.2d 377, 383 (10th Cir. 1963) (finding that absent co-owners,

who were parties to mineral leases, were not required parties in a case against the lease operator).

  In this case, Plaintiffs are seeking damages for an alleged trespass on their allotments. If

Plaintiffs recover damages, their recovery will be divided according to their percentage interests

in the Five Allotments. The Nation's property interest in the Two Allotments will not be

affected, and Plaintiffs do not seek injunctive relief such as removal of PNM's utility line.

(Compl. at 5–6) (requesting damages, interest, costs, and attorney's fees). Therefore, the Court

finds that the Nation is not a required party. Consequently, the Court need not analyze whether

the Nation is an indispensable party under Rule 19(b). *See Cassidy v. United States*, 875 F. Supp.

1438, 1445–46 (E.D. Wash. 1994) (denying motion to dismiss and concluding that since "[t]ribes

are not 'necessary' parties under Rule 19(a), they cannot be indispensable parties under Rule

19(b)."). In addition, the Court need not reach the related sovereign immunity issues that would

prevent the Nation's joinder as an involuntary plaintiff. *See Klamath Tribe Claims Committee v.

United States*, 97 Fed. Cl. 203, 213 (Ct. Fed. Cl. 2011) (noting that even if a court finds the tribe

is a required party, as a sovereign, tribe may not be compelled to join as an involuntary plaintiff).

The United States maintains that the Court should find that the Nation is an indispensable party in this case just as the Court determined the Nation was an indispensable party in the condemnation action. MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS NAVAJO NATION AND ALLOTMENT NUMBERS 1160 AND 1391 (Doc. No. 101). However, the United States misinterprets that holding in relation to this case. In the condemnation case, the Nation was a required party because PNM claimed a right to condemn a right-of-way on the Nation's property under an eminent domain statute, 25 U.S.C. § 357. Here, the Nation is not an indispensable plaintiff, and Plaintiffs may prosecute the trespass action against PNM for occupying an expired right-of-way over the same property. In this case, the Nation may decide to intervene, but, like the other fractional interest owners who are not plaintiffs, the Nation is not a required party.

In conclusion, the Court has subject matter jurisdiction over Plaintiffs' common law trespass claim under 25 U.S.C. § 345. *Nahno*, 625 F.3d at 1282. In addition, the Court may exercise that jurisdiction because Plaintiffs have not failed to exhaust administrative remedies. Finally, the Court need not dismiss this action for failure to join the Nation because the Nation is not a required party under Rule 19(a).

IT IS ORDERED that DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS (Doc. No. 14) is denied.

_____
SENIOR UNITED STATES DISTRICT JUDGE